IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POWERVAR, INC. t/a AMETEK POWERVAR, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 20-5908 |
| POWER QUALITY SCIENCES, INC. & : | |
| DEREK SWEAT. : | |

## MEMORANDUM

**SURRICK, J.**                                                                                    **JULY 15, 2021**

Presently before the Court are Defendant Power Quality Sciences, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 10) and Defendant Derek Sweat's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (ECF No. 9). For the following reasons, the motions will be denied.

**I.    BACKGROUND**

In this breach of contract action, Plaintiff AMETEK Powervar alleges that Defendants violated a valid and enforceable non-competition and non-disclosure agreement. Plaintiff is a company that designs, manufactures, and distributes power supply equipment. (Am. Compl. ¶ 2, ECF No. 8.) Plaintiff and Defendants entered into a Sales Representative Agreement, under which Power Quality Sciences, Inc. ("PQS") and Sweat, who is owner and chief executive of PQS, solicited and sold Plaintiff's products to customers within a designated geographic area in exchange for commissions. (*Id.* ¶¶ 9-13.) The Agreement explicitly requires that any action to enforce the Agreement be brought in the appropriate Pennsylvania state or federal court and the parties submit themselves to the personal jurisdiction of those courts. (2017 Sales Agreement § 9.11, Am. Compl. Ex. B.)

Due to a restructuring of its sales operations in 2019, Plaintiff terminated its contract with PQS/Sweat. (Am. Compl. ¶ 19.) Pursuant to the terms of the Agreement, Plaintiff agreed to pay PQS/Sweat post-termination commissions for one year so long as PQS/Sweat did not disclose Plaintiff's confidential information and did not sell products or solicit orders of products from Plaintiff's competitors. (*Id*. ¶¶ 21-22.) After paying PQS/Sweat over $413,000 in post-termination commissions, Plaintiff learned that PQS/Sweat sold a competitive product to one of its customers in violation of the Sales Representative Agreement. (*Id*. ¶¶ 27-32.)

Plaintiff alleges that PQS/Sweat solicited and sold a substantial quantity of "Mac Victor" power supply products to Chick-fil-A, a longstanding customer and an account formerly assigned to PQS/Sweat, within the twelve months following the termination of the Agreement. (*Id*. ¶ 30.) The Mac Victor sales compete directly with Plaintiff's products. (*Id*. ¶ 31.) Plaintiff alleges that PQS/Sweat used Plaintiff's proprietary information in order to finalize these sales. (*Id*. ¶ 35.) As a result, Plaintiff demanded that PQS/Sweat return the $413,000 Plaintiff paid in post-termination commissions. (*Id*. ¶¶ 44-45.) PQS/Sweat refused. (*Id*.)

Shortly thereafter, Sweat created a new business entity, Acuity Power Solutions, Inc ("APS"). (*Id*. ¶ 46.) Sweat is the sole incorporator of APS. (*Id*. ¶ 48.) Plaintiff alleges that Sweat created APS in order to continue operating the same business but as a new entity. (*Id*. ¶¶ 47-50.) Sweat divested PQS of all its value to defraud creditors such as Plaintiff. (*Id*.)

Plaintiff filed this lawsuit against PQS and Sweat for breach of contract seeking preliminary and permanent injunctive relief. PQS moves to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a breach of contract claim because the restrictive covenants are unenforceable as they are not limited in time and geographical scope. (Def. PQS's Mot., ECF No. 10.) Sweat moves to dismiss Plaintiff's

Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a breach of contract claim because Sweat was not a party to the Agreement and Plaintiff has not alleged enough facts to pierce the corporate veil. (Def. Sweat's Mot., ECF No. 9.)

II.     **STANDARD OF REVIEW**

    A.     **Federal Rule of Civil Procedure 12(b)(2)**

A complaint may be dismissed pursuant to Rule 12(b)(2) where the Court lacks personal jurisdiction over the moving defendant. In deciding a motion under Rule 12(b)(2), the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted). In order to "survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker*, 292 F.3d at 368). "[T]he plaintiff need only establish a prima facie case of personal jurisdiction" to defeat the motion to dismiss. *Id.* (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

    B.     **Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead

'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Nevertheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). "In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

### III. DISCUSSION

#### A. Defendant Sweat's Motion to Dismiss for Lack of Personal Jurisdiction

Sweat argues that Plaintiff's Amended Complaint should be dismissed because the Court lacks personal jurisdiction over him pursuant to Rule 12(b)(2). (Def. Sweat's Mot.) Sweat asserts that Plaintiff's sole basis for asserting personal jurisdiction is the forum selection clause contained in the Agreement. (*Id*.) Because he is not a party to the Agreement, Sweat maintains that he is not subject to personal jurisdiction in the Commonwealth of Pennsylvania. (*Id*.) Plaintiff contends that jurisdiction is proper because Sweat is the alter-ego of PQS. (Pl.'s Resp., ECF No. 14.)

"[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J. concurring)). A forum selection clause is presumptively valid and must be enforced absent a showing that "enforcement of the clause would violate a strong public policy

of the forum." *In Re Exide Tech.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008) (citations omitted). Where a forum selection clause is present, "analysis of the contacts with the forum state is inappropriate. Instead, the court must consider the validity and effect of the forum-selection clause in order to determine if there has been a consent to in personam jurisdiction." *Provident Mut. Life Ins. Co. of Phila. v. Bickerstaff*, 818 F. Supp. 116, 118 (E.D. Pa. 1993) (citations omitted).

"It is widely accepted that nonsignatory third-parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship." *AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700, 708 (E.D. Pa. 2014) (citations omitted) (bracketed text in original). Under the prevailing law of the Third Circuit, a nonsignatory party may be bound by "a forum selection clause in a contract if the party is a third-party beneficiary of the contract or is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound." *Id.* (citing *D'Elia v. Grand Caribbean Co., Ltd.*, No. 09-1707, 2010 WL 1372027, at *3 (D.N.J. Mar. 30, 2010)); *see also Jordan v. SEI Corp.*, No. 96-1616, 1996 WL 296540, at *6 (E.D. Pa. June 4, 1996) ("Forum selection clauses bind nonsignatories that are closely related to the contractual relationship or that should have foreseen governance by the clause."). "Courts have deemed a third party's conduct to be 'closely related' to a contractual relationship or dispute— and thus bound the third parties to forum selection clauses—in a wide variety of situations." *Synthes, Inc. v. Emerge Med., Inc.*, 887 F. Supp. 2d 598, 607 (E.D. Pa. 2012) (collecting cases). Ultimately, whether a nonsignatory should be bound by a forum selection clause depends upon a "common sense, totality of the circumstances approach that essentially inquires into whether, in

5

light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Id*. (citation omitted).

Here, the forum selection clause contained in the Agreement is presumptively valid. "It is fundamental contract law" in Pennsylvania "that one cannot be liable for a breach of contract unless one is a party to that contract." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 503 (E.D. Pa. 2014) (citing *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (1991), aff'd, 618 A.2d 395 (1993)).

At this stage, Plaintiff has alleged enough facts in its Amended Complaint to demonstrate that Sweat is so closely related to the contractual relationship between Plaintiff and PQS that it is fair and reasonably foreseeable for Sweat to be bound by the forum selection clause, as well. Plaintiff alleges that Sweat was the sole and dominant shareholder of PQS. The only other officer was Sweat's wife. Sweat signed the Agreement as "Owner" of PQS. Plaintiff alleges that Sweat violated the terms of their Agreement when he solicited orders and sold a substantial quantity of "Mac Victor" power supply products to Chick-fil-A, a longstanding customer assigned to PQS, within the twelve months following his termination. Plaintiff alleges that Sweat created APS less than one month after Plaintiff demanded PQS return the $413,000 in post termination commissions. Sweat does not dispute that a party can consent to jurisdiction through a forum selection clause. Moreover, there has been no showing that enforcement of the forum selection clause would violate a strong public policy of the forum (Pennsylvania). We are satisfied that Plaintiff has made *prima facie* showing that the Court has personal jurisdiction over Sweat.

## B. Defendant PQS's Motion to Dismiss for Failure to State a Claim

PQS argues that Plaintiff's breach of contract claims (Counts I and II) should be dismissed because the restrictive covenant provisions of the Agreement are patently unenforceable under Pennsylvania law. In making this argument, PQS contends that Section 3.2 of the agreement, which serves as the basis for Count I, was (1) not reasonable in its geographical scope and (2) not reasonably necessary for Plaintiff's protection. PQS also argues that Sections 9.1 and 8.3 of the Agreement, which serve as the basis for Count II, are unenforceable because they are overbroad, meaning they are not limited by time and scope. Plaintiff asserts that these arguments are premature and ignore Plaintiff's well-pleaded Complaint. We agree.

To state a claim for breach of contract, a plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract [,] and (3) resultant damages.'" *ATG Trust Co. v. Schlichtmann*, 314 F. Supp. 3d 718, 725 (E.D. Pa. 2018) (quoting *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 486 (E.D. Pa. 2016)); *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. Ct. 2011). The Supreme Court of Pennsylvania has recognized that non-competition agreements "have developed into important business tools to allow employers to prevent their employees and agents from learning trade secrets, befriending their customers and then moving into competition with them." *Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007) (quoting *Hess v. Gebhard & Co. Inc.*, 808 A.2d 912, 918 (Pa. 2002)). Although non-competition agreements are generally disfavored, courts have recognized that the public has an interest in the enforcement of agreements that are "freely entered into by the parties." *Coventry First, LLC v. Ingrassia*, No. 05-2802, 2005 WL 1625042, at *12 (E.D. Pa. July 11, 2005).

In order to be enforceable a restrictive covenant must satisfy three requirements:

(1) the covenant must relate to either a contract for the sale of goodwill or other subject property or to a contract for employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory.

*Bell Fuel Corp. v. Cattolico*, 544 A.2d 450, 456 (Pa. Super. 1988) (citing *Piercing Pagoda, Inc. v. Hoffner*, 351 A.2d 207, 210 (Pa. 1976)).

Plaintiff has presented sufficient facts to survive PQS' motion to dismiss Counts I and II. The restrictive covenant at issue under Count I prevents PQS from selling or soliciting orders that directly compete with a specific product line for a period of one year following termination. It is disingenuous – at this stage – to suggest that the Court should void the restrictive covenant simply because it does not identify a geographical scope.

We recognize that in order to be enforceable a covenant not to compete must be reasonably limited in geographic scope. *Hess*, 808 A.2d at 917. The party challenging the geographic restriction bears the burden of demonstrating unreasonableness. *Nat. Bus. Servs., Inc. v. Wright*, 2 F. Supp. 2d 701, 708 (E.D. Pa. 1998) (citing *John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1169 (Pa. 1977)). This burden cannot be met simply by asserting that the Agreement is unenforceable for lack of a geographic term, which is precisely PQS's argument. *See Victaulic*, 499 F.3d at 237 (noting that a "*per se* rule against broad geographic restrictions would seem hopelessly antiquated"). Both Pennsylvania courts, and federal courts applying Pennsylvania law, have upheld broad geographic restrictions where they were consistent with the scope of the employee's duties. *Id.* (citing cases in which broad geographic restrictions were reasonable so long as they were "roughly consonant with the scope of the employee's duties"). Courts also uphold agreements lacking any geographic limits where "the employee's duties and customers were equally broad." *PharMethod, Inc. v. Caserta*, 382 F.

8

App'x 214, 220 (3d Cir.2010) (citing *Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 476 (E.D. Pa. 2007)). Moreover, even where an agreement has been found to be overbroad, it is within the power of the court to reform the agreement in order to make it reasonable. *Bell Fuel Corp. v. Cattolico*, 544 A.2d 450, 457 (Pa. Super. 1988) ("[A] court of equity may not only remove an offensive term, but may supply a new, limiting term and enforce the covenant as so modified.").

We cannot determine whether the geographical scope in this case is reasonable. To determine if the lack of a geographical scope is fatal to Plaintiff's case, the facts must be developed further. Meanwhile, Plaintiff alleges that PQS entered into the Agreement, and then, after being terminated and within the following year, PQS solicited and sold competing products to Chick-fil-A, a customer PQS previously serviced on a national basis while working for Plaintiff. In the event of a breach, PQS waived its right to collect any post-termination commissions. This is enough to survive a motion to dismiss Count I for failure to state a claim.

With regard to PQS's statement that the restrictive covenant is not necessary for the protection of Plaintiff, PQS does not offer any argument other than that statement. Therefore, we will not address it here.

Next, the nondisclosure provisions of the Agreement under Count II are not void because they are not limited by time and scope. PQS asserts that these provisions are "tantamount to a facially overbroad non-compete provision masquerading as a confidentiality provision." (PQS's Mot.) At this stage, we cannot make that determination.

Plaintiff alleges that the provisions of the Agreement at issue prevent PQS from disclosing or using any of its confidential and proprietary information relating to Plaintiff's business, customers, and products. It also requires PQS to return this information to Plaintiff. In

9

its motion, PQS attempts to characterize these sections of the Agreement as an extension of the restrictive covenant already discussed. PQS wants to impose the same standard that would void a restrictive covenant. However, it is clear that Section 3.2 of the Agreement prevents PQS from competing with Plaintiff. Section 9.1 of the Agreement prevents PQS from disclosing or using Plaintiff's confidential and propriety information, such as information related to its business, customers, and products. Section 8.3 requires PQS to return "all Confidential Information and any other promotional materials and all of Supplier's supplies of every kind and character, and all other documents relating to the business of Supplier which may be in the possession or under the control of Representative, including but not limited to all intellectual property, product matrixes, scopes, probes or any demo products." Plaintiff alleges that PQS was uniquely positioned to know certain pieces of confidential information regarding the products, such as the Mac Victor power suppliers, Plaintiff sold to Chick-fil-A. (Am. Compl. ¶ 49.) Later, PQS used that information to solicit and sell competing products to Chick-fil-A. Accordingly, Plaintiff has alleged enough plausible facts to state a claim under Count II.

Therefore, accepting Plaintiff's allegations as true, as we must, Plaintiff has alleged sufficient facts to withstand PQS's challenge to its breach of contract claims.

C. **Defendant Sweat's Motion for Failure to State a Claim**

Sweat argues that Plaintiff has not alleged sufficient facts to establish any basis to pierce the corporate veil. (Def. Sweat's Mot.) Plaintiff responds that it has set forth a sufficient factual basis to pierce the corporate veil under an alter ego theory. (Pl.'s Resp.) We agree.

The corporate form may be disregarded when a party shows that the corporate veil should be pierced.

> It is true that a corporation ... is normally regarded as a legal entity separate and distinct from its shareholders ... [t]his legal fiction of a separate corporate entity ...

> will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless.... [W]henever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded.

*Ashley v. Ashley*, 393 A.2d 637, 641 (Pa. 1978); *see also*, *e.g.*, *Kellytown Co. v. Williams*, 426 A.2d 663, 668 (Pa. Super. 1981). There exists a "strong presumption in Pennsylvania against piercing the corporate veil." *Lumax Indus. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). "Given the complex, fact-specific questions related to the alter ego issue, the question whether one corporation is an alter ego of another is typically treated as a question of fact." *Castle Cheese, Inc. v. MS Produce, Inc.*, No. 04-878, 2008 WL 4372856, at *34 (W.D. Pa. Sept. 19, 2008) (citing *Crane v. Green & Freedman Baking Co., Inc.*, 134 F.3d 17, 22-23 (1st Cir. 1998)).

To survive Sweat's motion to dismiss, Plaintiff does not need to adduce enough evidence to carry its ultimate burden on an alter ego theory. Plaintiff alleges that less than one month after Plaintiff accused PQS/Sweat of breaching the Agreement and demanded that PQS/Sweat return its post-termination commissions, Sweat created a new entity, APS. Plaintiff alleges that Sweat did this for a number of reasons, but namely to divest PQS of its assets and continue his business while avoiding liability to Plaintiff. (Am. Compl. ¶¶ 46, 47.) Plaintiff also alleges that APS engages in the same business space as PQS, that Sweat is the dominant shareholder of both corporations, and that both share the same principal place of business – Sweat's personal residence. (Am. Compl. ¶¶ 48, 49.) In doing this, Plaintiff alleges Sweat abused the corporate form of PQS to fraudulently and inequitably avoid liability to Plaintiff. (Am. Compl. ¶ 52.) As such, Plaintiff has alleged enough necessary facts to give rise to the reasonable inference that Sweat is using the corporate form to further his own personal interests and, ultimately, that the alter ego theory can be satisfied.

Accordingly, at this stage, Plaintiff has stated enough facts to establish that Sweat is the alter-ego of PQS and a claim for breach of contract against Sweat.

IV. **CONCLUSION**

For the reasons stated above, Defendants' Motions to Dismiss will be denied.

An appropriate Order follows.


**BY THE COURT:**


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**